Mr. Brutani is on file for 2-14-0972. Although by the time the Barrington National Bank & Trust Company has successored to Charter Bank of Texas, they have not yet been released. The pargament will be held at the Hancock, Fremont, and Driscoll. The pargament will be held at the Fremont, Fremont, and Driscoll. The pargament will be held at the Fremont, Fremont, and Driscoll. Thank you. Mr. Driscoll, on behalf of the appellant, you may proceed. Thank you.  Thank you, Mr. Court, counsel. I want to, first of all, introduce myself. I am John Driscoll. I represent Father Raj Bhutani, who is the plaintiff and the appellant in this case. I want to thank this court for the opportunity to clarify some issues and perhaps answer any questions the court may have on these issues. I want to really draw focus to the pleadings. Obviously, this is primarily a case that was dismissed based on res judicata collateral estoppel, so the pleadings are first and foremost important on this. They never got past the pleading stage. The underlying case brought in this case was an action by Mr. Bhutani personally for conversion and replevant of certain personal property assets, which he personally owned, described in this record. He brought this action almost two years after the sale was confirmed, right? Was it confirmed as of March 9, 2012, and he brought this in January 14, 2014? Is that right? Is those dates right? That seems to be what the pleadings have been, okay? When you say the sale, you're talking about the foreclosure sale? Right, the foreclosure sale. I think foreclosure sale was confirmed in February of 2012. Okay, and he filed the replevant and conversion complaint in January of 2014, correct? That's correct. Can you illuminate us on why there was such a gap? Absolutely. Following the foreclosure of the real estate, there was no issue at all about the personal property. The personal property wasn't described or an issue at all in the foreclosure. No, I understand that, but why did he wait then almost two years to try and retrieve his personal property? I understand the argument on the foreclosure or on the judgment of the foreclosure wouldn't necessarily, in your opinion, reach the personal property left behind, but why did he wait to do anything is the question. Up until at least July 13th of 2012, and I specified that date because that was a letter directed to Mr. Boutani by counsel for Barrington Bank, where they acknowledged his ownership interest in the property, acknowledged his request and desire to retrieve the property, and acknowledged Mr. Boutani's interest in having a purchaser come get the property and actually making a demand that he get it. But in that letter said you are not to enter the premises without Barrington Bank's written permission. Months following that, Mr. Boutani had numerous efforts, including movers going up to the property, trucks going up there, who were turned away by Barrington Bank. They never gave the written permission that they insisted he needed in the July 13th. So you're saying as a practical matter, he tried to retrieve the equipment, the pharmaceutical supplies, and was rebuffed, and then he filed a suit? Absolutely. Is that alleged in the complaint? It certainly was alleged that he made numerous demands. You know, on specific days, because there were conversations all the time, correspondence, there were actions taken, like I said, movers that went up there with trucks and everything. Well, is that in the record? That's my question. Every single demand after July was not in the complaint. But it is alleged that numerous demands were made. In general, it was alleged. Yes, absolutely. In the attachment, there's also a pending motion to dismiss a portion of your appeal. In the attachments to that, from the commonwealth record, there's a sheriff's office report that says that the bank was notified. There were several attempts to contact your client. No response was received. So there were efforts to contact your client to make sure that he had access to the building and could come and remove the property, correct? There might have been some calls. That's what's in the record. I won't dispute that. Is there a duty on the bank to maintain his property? I believe under the DARS case there is, because they exercised complete and sole control over the property, which they did. When they sent the letter to Mr. Patani saying, this is your property, come get it and everything, except you can't enter this premises without the bank's written permission, they basically, at that time, exercised complete control of that property. And they never gave the written permission. There's nothing that they ever gave Mr. Patani saying, come get it on this day or under these circumstances. And despite the fact that he tried and attempted numerous times to get it, and like I said, the one time we had a mover come up there and somebody said, well, you can't have it because we would want a bond or something else. It was some discussion. Every attempt that was made was rebuffed. And he just got to the point where he realized, you know, he wasn't going to get it. He just wasn't going to get it. And that's when the lawsuit was filed. And I, you know, in terms of their motion to dismiss part of it, and I think that was based on, I think what they asked for is the replugging part. And I think that the motion was based on the fact that they have somebody saying the property was removed from this gurney location. That doesn't entitle them to dismiss the replugging action. Because it's not at that location, there's no affidavit saying it's not still in the bank's possession. Aside from that, let me ask you a question about that. The affidavit filed by the president of the defendant, was this ever filed in the trial court? This was filed directly with the appellate court claiming that part of the action is moot? Or was it filed in the trial court, this affidavit? I believe their action was only filed in the appellate court to dismiss that part of the action because of the mootness, because the property was not at the gurney address. I don't recall seeing that anywhere at the trial court. Does that strike you as a little unusual? Because wouldn't that, in essence, invite us to make a ruling on what could be controverted facts? To be honest, it didn't surprise me. Because throughout these pleadings, and at the trial court level, I don't think it's relevant to these issues. But we have made several additional requests and motions of the court to order them, to tell us where this property is. Because this is federally regulated. But I mean, with regard to this motion, are we as the appellate court fact-finders? Do we determine that it's a third party? I mean, do we accept this affidavit? Well, the property is gone. How do we make that finding? We don't make findings of fact in the appellate court. That's my understanding. There's nothing of the record, because I believe there is. So you're suggesting we should ignore that motion, right? I'm suggesting you should ignore the motion for that reason and also the fact that it doesn't even accomplish what they would like to accomplish. They don't say we don't have it. They say it's not at the gurney property. There's no affidavit saying Barrington Bank doesn't have it somewhere. So, yes, I'm asking this court to ignore that motion for its deficiency and lack of timeliness in this matter. Couldn't your client, even though he was dismissed from the foreclosure action, count two, he was dismissed, right? He was dismissed. But he still could have intervened and asked the court for an order as a condition of the sale that the personal property that remains in the building or buildings. Is it one building or is it? I think it was one building. One building. Reasonable efforts would be made to allow him to recover the property. Couldn't he have done that? Your Honor, and I'll say no. He couldn't. And I'll explain why. This cause of action, one of the elements of the cause of action Mr. Patani filed is for the wrongful possession. Not that they have possession. He knew they had possession of the property. It's wrongful possession. It gives them the right to conversion. The wrongful possession was not made aware to Mr. Patani until sometime after July 13th. The foreclosure action was long gone. It was five months over. The appeal time was over. There was no way for him to go back in time and file an intervention in case it was over. Well, he knew they were in possession of it the entire time, right? Actually, he himself was working on deals to get the property out of there. Which means he knew that they had it. I don't think they had possession, actually, until I can be wrong. I think until June 26th with the sheriff coming in and taking over the property. That was when he officially kind of lost control over access to the property. But they were still negotiating. The letter from the bank, from Barrington Bank, came in July acknowledging this is your property. We know you want to come get it. It's yours. Come get it. Except you have to have written permission. Mr. Patani thought that he was just working according to their terms to access the property. What are your position is the legal status of the property? They seem to be saying, hey, there was a judgment of foreclosure. Obviously, we have the right to take possession of the buildings, the real estate. There's no question. Right. So somebody leaves property in there. Don't we implicit in the foreclosure judgment is the right for us to take control of this property that's in there? That seems to be what they're saying is it's left behind and it's at our possession. I don't I don't think it was a yes. I think they I think they have the right to possession of that property. And with with agreement with Mr. Patani, they had not only the right to possession, but a duty. If they wanted to keep it there, they can't just can't throw it out. They love it. So you say for conversion, they throw it out in the garbage. Right. But they never suggested that was going to happen. The letter of July 13th made it very clear that they they didn't want him on the property to protect it. But they never said what would happen with the property. No, they didn't. They just said these are my arrangements and you need written permission when you come to get it. And he tried to get it. He was rebuffed. And so when did he definitively find out that the property was allegedly disposed of by some third property agent? Your Honor, we we didn't know that until after this. We didn't know that until after the action was filed. And we kept insisting just very briefly. There's a I think it's a side issue. I'm not going to raise this, but Mr. Patani's got another problem. This equipment is tailoring, encapsulating equipment. It's registered with the federal government. He has to report to DEA and FDA on the whereabouts of this equipment. He can't get in the wrong hands. He was we were asking the court to make Barrington Bank tell us when they said it's gone to tell us where it is. They've never told us, never told us where it is, what happened to it. The closest we came is this affidavit in a motion saying it was taken from the Dorney property. It doesn't tell us where it went or anything or who's got it. This property is valued, did I read this correctly, around $4 million? It's over $4 million. $4 million. It's on the record, 427 to 481. It describes every detail. Freestanding personal property had nothing to do with the foreclosure action. Nothing. It was never mentioned, not part of the complaint. It had nothing to do with the foreclosure action whatsoever. And Mr. Patani was dismissed by at their motion to dismiss him out of the case. And another thing, and I hope I addressed the question, his action didn't approve until way after any intervention could have been possible. But, and I do state in my brief that the Supreme Court in Sweden v. Campbell says that intervening is not something that a party has to do. That's a Supreme Court decision. So even, I mean, I think it's somewhat irrelevant because the foreclosure was way over when his cause of action accrued. But even if somehow he had anticipated it might be a problem, there was no obligation for him to intervene. Well, it was a problem. You said earlier, from the time that he got this action, he needed to take some steps to protect his personal property or the corporation's personal property. Oh, there's no question. And if we're allowed to prove this case, we'll demonstrate all of the contacts of people, the purchasers and everything he was trying to do. This is a lot of, this is a big property. So this case really ran on the trust court rule that made you to cut a collateral stop. It never really got beyond that, correct? No, that's it. There is one other issue I'd just like to very briefly point to. The judge in his dismissal order did say one other thing, which, to be honest, confused me a lot. But he said it's also, you know, it's not just whether you cut a collateral stop. The judge said that he's dismissing on 2619 based on the defendant's possessory interest in the real estate. Our complaint doesn't even assert any possessory interest in the real estate. So I don't know what was dismissed on that principle. I think that in the motion for the rehearing, which the transcript is part of the record, I think it became clear. When I raised that issue to the judge, you know, and I said, Judge, I don't understand this. I'm confused because we're not asserting that. And he said, wasn't there an order in the foreclosure giving him 30 days to get his property out? And counsel for the bank told the court, no, there wasn't ever an order like that, which is correct. There was never an order telling him to get his property out at the time of the foreclosure. So the judge was clearly mistaken when he thought there was. So the third element of the possessory interest in real estate, it's not res judicata because we're not asserting that in this case. And Mr. Batani was dismissed from the foreclosure action. I don't understand how any part of the judgment could affect Mr. Batani's interest personally when he's been dismissed. All right. That indicates that your time is up on your direct argument, but you will have the opportunity to address the court again in rebuttal. I appreciate your time. Mr. Verley, you may proceed on behalf of the appellate. Justices, good morning. William J. Verley on behalf of Barrington Bank. Your Honor, I did allude to at one point many of the items or point that Mr. Driscoll was making was not in the record, and that is with respect to the various efforts allegedly undertaken to retrieve the property. You conceded that he didn't document or delineate the specifics of these, but did he allege that there were, quote, unquote, numerous attempts to get the property or anything about attempts to get the property? I think there's a vague allegation about that, Your Honor, but there's no specificity to the actions that Mr. Batani allegedly took. And, you know, we are a fact pleading jurisdiction. I think it's incumbent on him to put a little bit more into the record and to his pleadings to that effect if that's what he's going to rely on. But I also want to point out that because he didn't file a transcript from the underlying motion to dismiss hearings, no bystanders report, no agreed statement of facts, even though his appeal is not barred, there's a presumption in favor of regularity of the trial court proceedings, and that's not overcome until he shows that error has been committed. That's right out of his own case. There is a transcript of the proceeding by the rehearing. Yes, there is a transcript from the motion to reconsider. And so any disagreements that he had with the trial court's ruling were essentially there was an opportunity to clear them up, right? He had an opportunity, yes. Whether or not he effectively did so, I guess, is another question. I don't believe he did. I saw you shaking your head, which you should probably try to avoid. Bad habit, yes. If you're going to object and you don't have a right to object, you're hurt here. But shaking your head when counsel said there was no order allowing 30 days for turnover of personal property, was there such an order? That was incorporated in the order approving, Judge. The order approving followed the statute, and it said that after 30 days, the sheriff was authorized to obtain possession of the property and surrender it to the bank. And I will note that order approving expressly stated that the sheriff was authorized to obtain possession of the property and surrender it to the bank from not only Avtar but also Mr. Boutani, the plaintiff here. What's the date of it? The date of that order is February 2, 2012, Your Honor. What's the page number? It's actually an exhibit to the plaintiff's complaint, and it appears it's the county law record, page 19. Was the issue of what would happen with the personal property, I mean, normally that was not litigated in the foreclosure action, was it? No, there was no count seeking to enforce any rights against the personal property, Your Honor. But this whole controversy arises from the fact that, as was noted, that once the bank is awarded possession of the real estate, if the defendant has an opportunity to remove his personal items from the property, and the Dargas case says that there's a duty to do so, and that my client is not saddled with the responsibility of having the safeguard to keep his property, arguably ad infinitum. As the Court pointed out, the extraordinary passage of time here between from the time that the judicial sale was held until Mr. Boutani filed this complaint, it's almost two years. That's why I asked that. I mean, it struck me as an inordinately long period of time. But, however, he says, aha, yeah, on paper you're right, but we made these attempts, if you dispute, to get the property, and we were rebuffed. We would be able to show that we went to the property with trucks, he's alluding to, which is Dior's record at this point, I suppose. But any event, in the real world, he says we went there with trucks and we got rebuffed. Well, Judge, I was counsel for the bank. I'm not aware of any situation where trucks showed up at that property, and I was in regular contact with my client and the property manager, and there were no advanced suggestions made to me as counsel during Mr. Driscoll's tenure or by Mr. Boutani that the trucks would show up on a date certain. Part of that delay, by the way, was occasioned by the fact that when my client took possession, there were impoundment stickers from the U.S. Marshal's Office on several items of property, and that issue was dealt with in my motion to dismiss. Apparently, Mr. Boutani was convicted in federal court of an issue regarding drugs, and as part of that, these items were all impounded. So when my client went into the warehouse after they obtained possession and discovered these stickers, we had to go back to federal court to get an order authorizing the bank to destroy the impounded items. The original obligation to destroy those impounded items was on Mr. Boutani, and in fact, he agreed to that action, which he never undertook. So that's part of the reason for the delay. What did he agree to? He agreed to destroy the items, the drug items and chemicals and other compounds that were located in that warehouse as part of the proceedings in the federal court. But not the equipment. I'm not aware of an order that impounded the equipment. That's correct. But my point is here that during all of this interval, he had an opportunity to proactively bring to the bank evidence that he had insurance, bonded movers, and make other arrangements to remove these things, and he did not do them. Now, I realize that's a little outside the record, but Mr. Driscoll has gone outside the record on that point. Well, let's talk about the issue of race judicata. Yes, sir. Explain how race judicata bars his complaint, because he's no longer a party to the action. The personal property was not subject of the foreclosure action. Well, he was a party to the action, Your Honor. It's my contention that he was a party and remained a party to the foreclosure action. Up to what point in time? Up to the order approving. He was a party at the time. When was he dismissed? There were two orders entered on the same day. One was the order approving judicial sale, which expressly recited that the, I'll quote, the sheriff of Lake County, Illinois, is authorized and directed to obtain possession of the premises legally described as, in the legal description, from the defendants Avtar LLC and Baldivar, Bhutan, and turn over possession of the premises to the plaintiff charter national bank and trust. And that date is what? That date is February 8th of 2012. And what date was he dismissed? There was another order entered on the same date that says that Mr. Bhutani is dismissed. We submitted the affidavit of Mr. Stiles, who was a counsel of record at that time. The affidavit, as part of our motion to dismiss, Mr. Stiles stated that the order approving the judicial sale was entered first. Once that order approving judicial sale was entered, that was a final order on count one, which was the foreclosure count. Count two, which was the action on the personal guarantee, was the only remaining count at that time. And that order of dismissal was directed to the only remaining count, that being the guarantee count. And that makes sense, Judge, because Judge Hoffman would want to have a final disposition of the proceedings. That concluded the case because there was only a two-count complaint. So count one, you're saying he was not dismissed on? That is correct. And count one was the foreclosure count? That is correct. Okay. Yes, sir. So once we get to that point, Mr. Bhutani being subject to the order of dismissal and the order of directing possession to be surrendered to the bank, race judicata comes into play because the order of possession is adjudicated in the order approving. Mr. Bhutani's complaint, and he comes at this from different angles, but fundamentally it appears that he wants access back into the property to retrieve items that he admits he left in there despite the fact that he was evicted and subsequently evicted by the sheriff. And two, that, and I infer this from his affidavit and some of the other actions cited in his argument, that he wanted the property in a place where he could show it to people to come and buy it. Effectively, he wanted it to stay as a showroom. Well, my client has no obligation to do that. The question of access to and from the keys of real property is an incident of possession. And his incident of possession, all his rights of possession were terminated in the order approving. Let me ask you this. We've asked you some other questions about his actions, the delay, what he knew, was he a party? But this case went out on a granting of a motion based on race judicata and collateral estoppel, as you've alluded to. That was the legal basis for the trial court's ruling, correct? Correct. So what I'm trying to determine is, obviously, in the foreclosure action, the quote-unquote right to possess the land, the property, was clearly litigated. But where is there anything about the right to possess, you know, equipment inside the land ever being litigated in the foreclosure action? Well, respectfully, Judge, we were stuck with it. He left it there. Are you saying it was abandoned? Yes. I am saying he left it behind in the face of a lawful order and vacated the premises. He left it behind despite the impending eviction, which did not take place until 120 days after the court entered his order approving. He doesn't dispute that he had access during this period of time, both in his reply on page 5 and in the transcript on the motion to reconsider. But that's separate. Those are not elements of a transactional analysis on either race judicata or collateral estoppel, is it? I mean, that's a side issue. No, I don't believe. I respectfully disagree because the Dargis case, Your Honor, which counsel and I seem to have diametrically opposing opinions on the effect of that case. The Dargis case involved an eviction, and Dargis found liability because the court found that the eviction was illegal. And in that case, the landlord had apparently undertaken some actions with respect to whatever the plaintiff had left behind. Because the court found the eviction was illegal, the court found a duty on behalf of the landlord to exercise some standard of care with respect to what was left behind. There has been no allegation in this case ever that the eviction was illegal. It's not in his pleadings. It's not in his motions. But going back to the collateral estoppel, does Dargis stand for the proposition that when you – that in a standard foreclosure action that implicitly, you know, resolves the rights to equipment left in the premises, it's race judicata? Is that what it says? The statute and, I believe, Dargis stand for the proposition, Your Honor, that if there's a lawful foreclosure and a lawful eviction, the parties under duty as a matter of law to vacate. Yes. Clearly, the order says that. Yes. And that means not just his person, but whatever else he possesses, he is to be out of there. And that's part of the race judicata analysis? Yes. You're arguing that he could have raised this claim in the foreclosure action? I am arguing that, too. Yes. And race judicata bars all claims that were raised or could have been raised. And possession of personal property left on a premises is an issue that can be raised in a foreclosure action. Absolutely. He could have gone to Judge Hoffman and said, Judge, I need time to get out of here. I need time to remove this equipment. I scoured the record in the foreclosure case. I saw no such pleading, no such effort to ask for relief, to seek an alternative to resolving this. And, candidly, part of that, again, Mr. Driscoll referred to this report that Mr. Boutani has to make. Mr. Boutani was debarred from the pharmaceutical industry by the FDA. That was the order that I attached to my motion to dismiss. I frankly question whether or not he has any right as a matter of law to possess drug-making equipment, which is incident to the pharmaceutical industry. However, because we're dealing with the race judicata issue here and the question of possession, I think it's clear that it was within his ability at all times to either seek relief from the court or proactively do something to protect and serve. What he now is suing my bank for, my client for. And what he's trying to do here is basically foist upon my client the financial burden that occasions his failure to follow the lawful order of the court. Your argument also was the bank did not want to violate a federal court order allowing him access to equipment that he was barred from possessing. That was a concern, yes, Judge. Now, did you file this affidavit on behalf of your client? The affidavit. The affidavit of the vice president of the bank that a third-party agent's property is gone? Yes, sir, I did. How do we consider an affidavit that essentially asks us to find something that's true that was never litigated? You're not, in fact, fighting about it, Your Honor. I agree. However, the point that Mr. Boutani continued to raise is that he wants access back to the real estate. That is in his pleadings and his complaint. And the fact of the matter is the bank sold that property. It no longer has the right of access to that property. That's recorded. I think the court can take judicial notice of the deed, which I referenced in the motion. So, to that extent, I believe that the circumstances indicate the court could no longer grant effective relief because, again, Mr. Boutani did not post any bond or seek any stay of enforcement of the foreclosure action. There was nothing to preclude the bank from ultimately selling the property. But it couldn't do so with a bunch of junk in there. And I apologize for the characterization, but a bunch of personal property left behind. So, what was their alternative? They're under no obligation to maintain it ad infinitum. There was certainly no allegation of any leasehold arrangement or anything to that effect that would allow some possessory right  And Mr. Driscoll has repeatedly referred to my correspondence that I had sent to Mr. Boutani. But if the full correspondence is indicated or referred to, I suggested in there a 10-day limit within which Mr. Boutani had to do something to show us that he was going to move forward proactively. You're saying nothing happened? Nothing happened. All right. As your time as you know is up, that's the signal. So, I appreciate the argument. And thank you very much. Thank you, Your Honor. Mr. Driscoll, you may respond to the phone. Can you answer this last question hanging in the air? He said he sent Mr. Boutani a letter or somebody, a letter of counsel, and he didn't get any response. What's your response to that? The letter that I know about that was sent to Mr. Boutani is the one that's attached to our brief. It's A5. It's in record 231 and 232. It's the July 13th letter that Mr. Boutani received from, actually, counsel who's in court today. And that's the letter that, as of July 13th, acknowledged his right to the property, that his desire to sell the property. Everything I mentioned before. The last sentence in that letter is, please note this demand does not entitle you to access the property in the absence of my client's written consent. They never wrote. So, it was an invitation with a qualifier with a condition. It certainly was. And it was actually a threat. Don't come on this property unless you have a writing from us. They never, ever gave him written permission. Did he seek written permission? All the time. Access to the property. It wasn't Mr. Boutani who wanted the written permission. He wanted access. If they needed written permission, they gave me written permission. If you want to open the doors, let me get my property. Well, one of the problems I think that counsel raised is that your client is convicted drug offender, needed a court order. Well, and that's a complete misrepresentation. Is it? It's an absolute complete misrepresentation. It's not part of the record. I've got e-mails from the FDA and DEA while I'm trying to get the information where this property was. And I'm talking about three months ago. Asking Mr. Boutani to give him the information. Would they be sending him e-mails requesting information on his tabloid equipment if he was a convicted felon who couldn't use it? Well, I think counsel's point is not asserting that your client was not in communication with the DEA, but the DEA is communicating with your client because they want to know where the property is. The conviction, with all due respect, Your Honor, the conviction he's talking about was a conviction for the wrong labeling was being used. And it was a conviction. It was over 10 years ago. Mr. Boutani's been operating a pharmaceutical establishment with all the controls under FDA and DEA for over 10 years. This is a farce, if anything. He knows this. He knows the dates of these. He didn't tell you that. It was over 10 years ago. I've read the opinion. I think Justice Bauer wrote the Seventh Circuit opinion. Mr. Boutani was operating legally a pharmaceutical business under the controls of the federal government. And they knew it. They knew he was involved. There's nothing wrong. There might have been a box of some discarded materials, which is not part of our complaint anyway. We're not seeking chemicals or labelings that he wasn't using anymore, which obviously the DEA knows he wasn't using because they inspect the premises all the time. Let's go back to the res judicata issues. And whether or not he was a party to the case and the fact that he was dismissed on February 8th of 2012, and whether or not that was only with respect to count two, and whether or not he was still a party at that time when the order approving the sale was entered on February 8th as to count one. I have read those orders. Count one of their complaints was against Avtar LLC, the owner of the real estate. Was he a party to it? He was a party as a defendant in count two. As to count one, my question is as to count one. Was he a party to that? Not that I can see because he was not the owner of the property, of the real estate. It looks like they're assuming Avtar LLC, the owner of the property, count one for the possession of the real estate in a rearage. Count two was against Boutani for the guarantee on the note. So are you saying he was a party to that lawsuit only with respect to count two? Absolutely. Okay. My understanding. And that's why he was dismissed, because they were able to get a default judgment against Avtar because Mr. Boutani could not. Well, Mr. Boutani is Avtar. I mean, it's one and the same. The corporation is him, isn't it? Well, it's an LLC, and legally it's him. Of course, we all know what we're talking about. Sure. But no, I mean, legally, absolutely not. Well, he's in privity with the corporation that he's doing business under, correct? With all due respect, Your Honor, I don't think so, because privity is described by the Supreme Court as having a successive right to the possession of the property. The real estate owned by Avtar, Boutani didn't have any successive right to that real estate, nor did Avtar ever have any successive right to any of the pharmaceutical equipment. So under the Supreme Court description, I would say no. Your Honor, you're suggesting he could not have sought a court order while Compton was still pending to have access to the property to secure those personal effects. You would need more. The personal effects was not an issue in the foreclosure. He would have had to speculate. It was an issue for him if he wanted to get access to that property. But he had no problem with access until June 26th. There was no problem, even July 17th. Counsel says, yeah, it's your property. We'll make arrangements. But you can't come on the property. You need a written permission. It wasn't a problem until he realized they're just not going to let me come get it. And if they had denied him access or didn't get written permission, why not go back to Judge Hoffman and ask for a court order? Well, why not go back? I think after 30 days from February 8th, I think that case was over. But I don't know if it would have been any different to go back and try to reopen a case or just file his cause of action. He never had a claim in a foreclosure action. It's not like he's splitting a claim. There was nothing pending on this personal property in there. Well, he was back in court on March 9th, 2012, for the order of possession, right? Could have filed a motion at that point. Again, I don't think that the personal property was an issue. It wasn't an issue, but could he have filed a motion at that point? It clearly was not, but could he have? He was dismissed. I will say this. I can't cite to the record. When he was dismissed, Your Honor, he did come back in on a motion, and he was threatened by the court. He said, you are dismissed from this case. You can't do anything for Aftar, and if you come, I'm dismissing your motion, and if you come back again, I'm going to sanction you. When was it? That was soon after the February 8th, 2012. I'm saying it's within days or weeks. He had a motion on some issue, and the court threatened him that if he ever came back into that courtroom, he would be dismissed. And you don't recall what exact date that was? It was sometime in March? I believe it was in March. I believe it was. I apologize for not knowing that. And I'm only addressing that to answer your questions. Right. We want you to be able to finish your thoughts or answer to the question. Thank you. All right. Thank you very much, both counsel, for the quality of your arguments. The matter will be taken under advisement. We will issue a written decision in due course, and the court stands adjourned subject to call. Thank you.